# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENDWARD ALTON MIXON, JR., | 1:16-cv-01868-BAM (PC) |
| Plaintiff, | SCREENING ORDER GRANTING LEAVE TO AMEND |
| v. | |
| H. TYSON, et al., | (ECF No. 1) |
| Defendants. | **THIRTY-DAY DEADLINE** |

Plaintiff Lendward Alton Mixon, Jr. ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's complaint, filed on December 14, 2016, is currently before the Court for screening. (ECF No. 1.)

**I.  Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(A)(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

1

conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969. Courts are required to liberally construe pro se prisoner complaints. Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976).

## II.    Plaintiff's Allegations

Plaintiff is currently housed at California State Prison, Sacramento in Represa, California. The events in the complaint are alleged to have occurred while Plaintiff was housed at Kern Valley State Prison and Corcoran State Prison. Plaintiff names the following defendants: (1) Correctional Lieutenant H. Tyson; (2) Correctional Sergeant Rios; (3) Correctional Officer Crisantos; (4) Correctional Officer Silva; (5) Correctional Officer Villa: (6) Correctional Officer Jiminez; (7) Correctional Officer Prindez; (8) Dr. Lozovoy; (9) Dr. Metts; and (10) Commissioner of the Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is suing Drs. Lozovoy and Metts and the Commissioner of CDCR in their official and individual capacities. All other defendants are sued in their individual capacities.

### A. Events at Kern Valley State Prison

While at Kern Valley State Prison, Plaintiff alleges that on July 6, 2013, he was escorted to the segregation unit and his medically issued permanent shoe lift was confiscated by CDCR personnel. Plaintiff informed CDCR personnel that he was a member of the Americans with Disabilities Act ("ADA") and needed his shoe lift to relieve pain in his right foot and leg.

2

Defendant Tyson informed Plaintiff that his orthotic device would be returned upon Plaintiff's release from the segregation unit. Plaintiff suffered pain while waiting to be released. Upon his release, Plaintiff searched his personal effects and discovered that the shoe lift was not in his property. On September 4, 2013, Plaintiff filed a 602 administrative grievance inquiring about his orthotic device. The grievance was cancelled because it was deemed a custody issue, not a health care issue.

On March 25, 2014, Plaintiff spoke with an ADA representative and was scheduled to see a doctor. Plaintiff alleges that in retaliation for his constant complaining, he was denied and delayed in receiving adequate medical attention. Plaintiff submitted another 602 administrative grievance, which was granted. However, Plaintiff alleges that due to his many complaints, medical attention was further delayed. Plaintiff contends that he was in constant pain and his leg became weaker and began to give out, causing him to suffer falls.

On August 8, 2014, as Plaintiff was being handcuffed and escorted back to his living quarters, Defendant Crisantos pulled Plaintiff's right arm aggressively, causing Plaintiff to lose his balance. As Plaintiff's leg gave away, Defendants Rios and Crisantos slammed Plaintiff to the ground and attacked him. Plaintiff alleges that this was due to him not having his orthotic device and resulted in him being accused of resisting. Plaintiff was escorted to the segregation unit where he informed custody staff that he was waiting for his shoe lift from medical and had difficulties walking without it. Plaintiff was told that a medical appointment had been scheduled, but he was forced to suffer another six months in severe pain. Plaintiff again attempted to remedy the issue through administrative channels without resolution.

Plaintiff wrote another 602 administrative grievance, which was later re-categorized as an accommodation request and heard by Sergeant Kirby. Plaintiff was issued a temporary wheelchair and scheduled to be seen by a doctor on April 21, 2015.

On March 3, 2015, Plaintiff saw Dr. Lozovoy. During the visit, Defendant Silva repeatedly accused Plaintiff of faking his injury and not needing a wheelchair. Plaintiff alleges that these comments provoked Dr. Lozovoy, who became hostile and rude. Without examining Plaintiff, Dr. Lozovoy asked the correction officer to take the wheelchair. Plaintiff alleges that

3

he then terminated the visit out of fear. Plaintiff submitted a 602 administrative grievance explaining the incident. He was granted the opportunity to be seen by another doctor and was rescheduled for an appointment on April 17, 2015.

On April 17, 2015, prior to his appointment, Plaintiff was stripped searched and placed in restraints. Plaintiff informed the escorting officer that in accordance with his Islamic faith it was forbidden for him to be in the presence of women in underwear with a hole in the front exposing his genitals. Plaintiff was given a jumpsuit and was escorted to his medical appointment. Upon arrival, Defendant Villa asked why Plaintiff was wearing a jumpsuit. Plaintiff explained that as a Muslim inmate, he was strictly prohibited in his faith from being exposed in his underwear in the presence of women. Defendant Villa then directed Defendant Silva to escort Plaintiff back to his cell. Plaintiff was thereafter denied medical attention until he allowed himself to be exposed in the company of women. Plaintiff could not expose himself, so he wrote a 602 administrative grievance. Plaintiff was then escorted out of the prison and housed at Corcoran State Prison.

**B. Events at Corcoran State Prison**

Plaintiff alleges that he was "red flagged" at Corcoran State Prison. Upon his arrival, Plaintiff learned that his accommodation chronos had been terminated. Plaintiff began to see several orthopedic clinicians in an attempt to resolve the issue of his shoe lift. Plaintiff alleges that "orthotics" repeatedly attempted to sell him shoes that he did not want or need. He continued to refuse the shoes and specified that he only wanted the shoe lift replaced. Plaintiff contends that he was made to sign refusals regarding the purchase of the shoes.

On January 20, 2016, Plaintiff was seen by an orthotic clinician. Plaintiff stated that he only wanted a shoe lift and not shoes. Plaintiff's request was ignored and shoes were ordered. Plaintiff was offered shoes as a temporary solution to relieve his pain. Plaintiff signed a trust withdrawal as a precaution against damage or failing to return the shoes. Plaintiff later learned that money had been removed from his account for the shoes, which he did not want and had given back. Plaintiff alleges that this incident further delayed his receipt of a shoe lift to relieve his pain.

Due to the termination of his accommodation chrono, Plaintiff contends that custody

4

began to housing him on the upper/top bunk. Plaintiff informed Defendant Jiminez that he had medical issues preventing him from jumping up and down from the upper/top bunk. Plaintiff asked to be housed in a lower bunk and was informed by Defendant Jiminez that Plaintiff would have to speak to medical before he could be accommodated.

On May 9, 2016, while attempting to exit the top bunk, Plaintiff's leg gave out and he suffered a fall, injuring his lower back. Plaintiff then wrote a 602 administrative grievance requesting a lower bunk. The grievance was denied and Plaintiff was forced to continue using an upper/top bunk. Plaintiff submitted a medical request form and was seen by Dr. Metts. Plaintiff informed Dr. Metts of his condition and told him he needed a bottom bunk/bottom tier accommodation chrono because he had fallen once before from the top bunk. Dr. Metts refused to issue the accommodation chrono.

On August 5, 2016, Plaintiff again suffered a fall while attempting to get off of his assigned upper/top bunk. Plaintiff fractured the bone in his right foot. Plaintiff then wrote a 602 administrative grievance requesting a bottom bunk. He was given a bottom bunk.

Plaintiff asserts a claim for violation of the free exercise clause of the First Amendment, violation of the Eighth and Fourteenth Amendments regarding medical care, and violation of the ADA. Plaintiff seeks compensatory and punitive damages.

**III.    Discussion**

**A. Federal Rules of Civil Procedure 18 and 20**

Plaintiff asserts numerous allegations against different defendants based on different, unconnected events at different institutions. Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff only may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are common questions of law or fact. Fed. R. Civ. P. 20(a)(2); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997); Desert Empire Bank v. Insurance Co. of North America, 623 F.2d 1371, 1375 (9th Cir. 1980). Only if the defendants are properly joined under Rule 20(a) will the Court review the

other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not pursue claims for relief in this action arising from events which occurred at different times, involved different defendants and took place at two separate institutions. For instance, Plaintiff may not pursue a claim regarding the free exercise of his religion against certain correctional officers while simultaneously pursuing an Eighth Amendment claim against a prison doctor arising on a different date under different circumstances. Plaintiff also may not pursue diverse claims against prison officials at two separate prisons arising from unrelated events. If Plaintiff files an amended complaint that fails to comply with Rules 18(a) and 20(a)(2), unrelated claims and defendants will be subject to a recommendation of dismissal.

### B. Section 1983 Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution … shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978); Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff has failed to link Correctional Officer Prindez or the Commissioner of the CDCR to any constitutional violation. Plaintiff also may not simply refer generally to defendants or to correctional officers in his allegations. Instead, Plaintiff must allege what each named

6

defendant did or did not do that caused the asserted constitutional violation.

**C. Eleventh Amendment – Official Capacity**

Insofar as Plaintiff seeks to bring claims for damages against any defendant in his or her official capacity, he may not do so. The Eleventh Amendment prohibits suits for monetary damages against a State, its agencies, and state officials acting in their official capacities. Aholelei v. Dep't of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). Therefore, the Eleventh Amendment bars any claim for monetary damages against defendants acting in their official capacities.

**D. Americans with Disabilities Act**

Title II of the Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, and activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Tile II applies to the services, programs, and activities provided for inmates by jails and prisons. Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 208-13 (1998); Simmons v. Navajo Cty., 609 F.3d 1011, 1021-22 (9th Cir. 2010); Pierce v. Cty. of Orange, 526 F.3d 1190, 1214-15 (9th Cir. 2008). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002); accord Simmons, 609 F.3d at 1021; McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004).

Plaintiff's complaint does not set forth any facts supporting a claim that he was excluded from or discriminated against with regard to services, programs, or activities at either Kern Valley State Prison or Corcoran State Prison by reason of any diagnosed disability. Instead, the incidents giving rise to this lawsuit relate to the medical care Plaintiff was provided. The lack of medical treatment or the failure to provide an accommodation for his medical condition does not provide a basis upon which to impose liability under the ADA. Simmons, 609 F.3d at 1022 ("The ADA prohibits discrimination because of disability, not inadequate treatment for

disability,"); see also Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners....The ADA does not create a remedy for medical malpractice.").

Additionally, to the extent Plaintiff is suing any of the defendants in their individual capacities to vindicate rights under the ADA, he may not do so. There is no individual liability under the ADA. See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002).

### E. First Amendment – Free Exercise Clause

"Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (internal quotations and citations omitted). However, "a prisoner's right to free exercise of religion 'is necessarily limited by the fact of incarceration.' " Jones v. Williams, 791 F.3d 1023, 1032 (9th Cir. 2015) (citation omitted). " 'To ensure that courts afford appropriate deference to prison officials,' the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be 'judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.' " Id. (quoting O'Lone, 482 U.S. at 349, 107 S.Ct. 2400.) "The challenged conduct 'is valid if it is reasonably related to legitimate penological interests.' " Id. (quoting O'Lone, 482 U.S. at 349, 107 S.Ct. 2400). "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of [his] religion." Jones, 791 F.3d at 1031; Shakur v. Schriro, 514 F.3d 878, 884–85 (9th Cir. 2008).

Plaintiff's complaint does not set forth any facts suggesting that the practice of his religion was substantially burdened by prison officials. Instead, the allegations demonstrate that Plaintiff was permitted to don a jumpsuit when he expressed his concerns about appearing in his underwear in front of women. There is no indication that prison officials required or otherwise forced Plaintiff to violate his religious beliefs or that the practice of his religion was substantially burdened by any action of prison officials.

### F. Fourteenth Amendment

Plaintiff appears to be asserting a claim for denial of medical care pursuant to both the

Eighth and Fourteenth Amendments to the United States Constitution. (ECF No. 1 at p. 13.) To the extent Plaintiff seeks vindication of his rights under the Fourteenth Amendment based on medical care, his claims are properly analyzed under the Eighth Amendment. The concept of substantive due process is expanded only reluctantly and therefore, if a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. County of Sacramento v. Lewis, 523 U.S. 833, 842-43 (1998) (quotation marks and citation omitted). Thus, Plaintiff cannot maintain a Fourteenth Amendment claim based on his medical care because such a claim is covered by the Eighth Amendment.

### G. Eighth Amendment – Deliberate Indifference to Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.' " Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L.Ed.2d 251 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012). The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must actually make the inference. Farmer, 511 U.S. at 837.

"Deliberate indifference is a high legal standard." Id. at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). The indifference must be substantial, and "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980).

Events at Kern Valley State Prison

Plaintiff attempts to assert a cognizable deliberate indifference claim arising from a variety of incidents at Kern Valley State Prison. As discussed more fully below, Plaintiff's complaint does not set forth sufficient allegations to state a colorable claim for deliberate

9

indifference against defendants at Kern Valley State Prison. First, Plaintiff challenges the confiscation of his shoe lift on July 6, 2013, when he was placed in the segregation unit. However, Plaintiff's own allegations suggest that the shoe lift was not a permitted item in the segregation unit, and there is no indication that he complained to prison officials of any pain or suffering during his placement in that unit. Thus, prison officials could not have known that a substantial risk of serious harm existed.

Second, Plaintiff includes generalized allegations that he was denied and delayed in receiving medical attention. These conclusory statements are not sufficient to state a cognizable claim. Plaintiff's complaint does not set forth sufficient facts to demonstrate how his care was denied or delayed or even who was responsible for any delay or denial.

Third, Plaintiff blames his medical condition as the cause of Defendants Rios and Crisantos slamming him to the ground on August 8, 2014, asserting that they wrongly believed he was resisting them. Plaintiff's complaint does not set forth sufficient allegations to state a cognizable deliberate indifference claim against Defendants Rios and Crisantos. There is no indication that Defendants Rios and Crisantos were aware of any medical need and failed to adequately respond.

Fourth, Plaintiff challenges Dr. Lozovoy's removal of the wheelchair following comments by Defendant Silva that Plaintiff did not need a wheelchair. Plaintiff's allegation that Defendant Silva accused him of faking his injury and not needing a wheelchair is not sufficient to state a cognizable deliberate indifference claim. Dr. Lozovoy, not Defendant Silva, authorized removal of the wheelchair. Plaintiff's mere disagreement with Dr. Lozovoy's decision to remove the wheelchair is not sufficient to state a claim. A difference of opinion between a prisoner and a medical provider regarding the appropriate course of treatment does not amount to deliberate indifference to serious medical needs. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Fifth, and finally, Plaintiff's refusal to remove his jumpsuit to receive treatment does not demonstrate that prison officials were deliberately indifferent to Plaintiff's serious medical needs.

Events at Corcoran State Prison

As with his claims involving incidents at Kern Valley State Prison, Plaintiff's complaint also fails to set forth sufficient facts to state a cognizable claim arising out of events at Corcoran State Prison. First, Plaintiff's apparent disagreement with, and refusal to wear orthopedic shoes, does not state a cognizable deliberate indifference claim. At most, Plaintiff has raised a difference of opinion with his medical providers regarding the appropriate course of treatment, which does not amount to deliberate indifference to his medical needs. Sanchez, 891 F.3d at 242.

Second, Plaintiff's complaint fails to state a cognizable deliberate indifference claim against Defendant Jiminez. According to Plaintiff's own allegations, his accommodation had been cancelled and Defendant Jiminez merely directed him to speak to medical in order to obtain an accommodation. There is no indication that Defendant Jiminez interfered with or delayed medical treatment or was deliberately indifferent to Plaintiff's medical needs by directing him to medical staff.

Third, Plaintiff appears to bring a claim against Dr. Metts for refusing to issue an accommodation chrono after Plaintiff fell from his bunk on May 9, 2016. However, Plaintiff fails to set forth sufficient facts indicating that Dr. Metts acted with deliberate indifference to a serious medical need. Instead, it appears that Plaintiff disagrees with Dr. Metts' diagnoses and course of treatment, which is not sufficient to state a claim. Even if Dr. Metts erred in his diagnosis, mere negligence or medical malpractice will not support a deliberate indifference claim. Broughton, 622 F.2d at 460.

Fourth, and finally, Plaintiff also appears to assert liability against Dr. Metts for Plaintiff's later fall and broken foot injury on August 5, 2016. Plaintiff's complaint does not set forth sufficient facts demonstrating that Dr. Metts was deliberately indifferent to a serious medical need. There is no indication that Plaintiff pursued an accommodation in the three month period between Dr. Metts' refusal and the subsequent fall or that Plaintiff's fall and injury were attributable to his physical condition.

### C. Conclusion and Order

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 18 and 20 and fails to state a cognizable claim for relief. As Plaintiff is proceeding pro se, the Court will grant Plaintiff an opportunity to amend his complaint to cure the identified deficiencies to the extent he is able to do so in good faith. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. George, 507 F.3d at 607 (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cty., 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;

2. Within thirty (30) days from the date of service of this order, Plaintiff shall file a first amended complaint curing the deficiencies identified by the Court in this order; and

3. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim.

IT IS SO ORDERED.

Dated: **December 4, 2017**       /s/ *Barbara A. McAuliffe*
                                                        UNITED STATES MAGISTRATE JUDGE