**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LENDWARD ALTON MIXON, JR., | Case No. 1:16-cv-01868-DAD-BAM (PC) |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO CORRECT SPELLING OF DEFENDANT JIMENEZ'S NAME |
| v. | |
| TYSON, et al. | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION |
| Defendants. | FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES |
| | (ECF No. 39) |
| | **FOURTEEN (14) DAY DEADLINE** |

I.      **Background**

Plaintiff Lendward Alton Mixon, Jr. is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This case proceeds on Plaintiff's first amended complaint against Defendants Jimenez[1] and Metts for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment.

On March 1, 2019, Defendants Metts and Jimenez filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, on the ground that Plaintiff failed to exhaust his

---

[1] Plaintiff identified the defendant as "Jiminez" and the Court's docket reflects that spelling. However, papers filed by Defendant states that his name is correctly spelled "Jimenez." The docket will be updated accordingly.

administrative remedies before filing suit as required by 42 U.S.C. § 1997e.[2]  Fed. R. Civ. P. 56(c), Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (*en banc*), cert. denied, 135 S. Ct. 403 (2014).  (ECF No. 39.)  After receiving an extension of time, Plaintiff filed his opposition to Defendants' motion to summary judgment on April 8, 2019.  (ECF No. 44.)  Defendant filed a reply on April 15, 2019.  (ECF No. 45.)  The motion is deemed submitted.  Local Rule 230(l).

## II.     Legal Standard

### A.     Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002).

Section 1997e(a) also requires "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'"  Woodford v. Ngo, 548 U.S. 81, 90 (2006) (citation omitted).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 90-91.  "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Jones v. Bock, 549 U.S. 199, 218 (2007).

The failure to exhaust is an affirmative defense, and the defendant bears the burden of raising and proving the absence of exhaustion.  Id. at 216; Albino, 747 F.3d at 1166.  "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  Albino, 747 F.3d at 1166.  Otherwise, a defendant must produce

---

[2] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment.  See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411–12 (9th Cir. 1988).  (ECF No. 17-2.)

1  evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56

2  only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the

3  plaintiff failed to exhaust.  Id.

4  **B.      Summary Judgment Standard**

5  Any party may move for summary judgment, and the Court shall grant summary judgment

6  if the movant shows that there is no genuine dispute as to any material fact and the movant is

7  entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino,

8  747 F.3d at 1166; Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each

9  party's position, whether it be that a fact is disputed or undisputed, must be supported by

10  (1) citing to particular parts of materials in the record, including but not limited to depositions,

11  documents, declarations, or discovery; or (2) showing that the materials cited do not establish the

12  presence or absence of a genuine dispute or that the opposing party cannot produce admissible

13  evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may

14  consider other materials in the record not cited to by the parties, although it is not required to do

15  so.  Fed. R. Civ. P. 56(c)(3); Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.

16  2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).  "The

17  evidence must be viewed in the light most favorable to the nonmoving party."  Williams v.

18  Paramo, 775 F.3d 1182, 1191 (9th Cir. 2014).

19  Initially, "the defendant's burden is to prove that there was an available administrative

20  remedy, and that the prisoner did not exhaust that available remedy."  Albino, 747 F.3d at 1172.

21  If the defendant meets that burden, the burden of production then shifts to the plaintiff to "come

22  forward with evidence showing that there is something in his particular case that made the

23  existing and generally available administrative remedies effectively unavailable to him."  Id.

24  However, the ultimate burden of proof on the issue of administrative exhaustion remains with the

25  defendant.  Id.  "If undisputed evidence viewed in the light most favorable to the prisoner shows a

26  failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  Id. at 1166.

27  However, "[i]f material facts are disputed, summary judgment should be denied, and the district

28  judge rather than a jury should determine the facts."  Id.

1    **III.**    **Discussion**

2         **A.**    **Summary of CDCR's Administrative Appeal Process**

3         A prisoner in the custody of the California Department of Corrections and Rehabilitation

4    ("CDCR") satisfies the administrative exhaustion requirement for an inmate grievance by

5    following the procedures set forth in California Code of Regulations, title 15, §§ 3084-3084.9.[3]

6         California Code of Regulations, title 15, § 3084.1(a) provides that "[a]ny inmate … under

7    [CDCR's] jurisdiction may appeal any policy, decision, action, condition, or omission by the

8    department or its staff that the inmate … can demonstrate as having a material adverse effect

9    upon his or her health, safety, or welfare." An inmate is required to use a CDCR Form 602 to

10   "describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, §

11   3084.2(a). An inmate is limited to one issue, or related set of issues, per each CDCR Form 602

12   and the inmate "shall state all facts known and available to [them] regarding the issue being

13   appealed at the time of submitting" the CDCR Form 602. Cal. Code Regs. tit. 15, § 3084.2(a)(1)

14   & (a)(4). Further, the inmate "shall list all staff member(s) involved and … describe their

15   involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3). If known, the inmate must

16   include the staff member's last name, first initial, title or position, and the dates of the staff

17   member's involvement in the issue being appealed. Id. If the inmate does not know the staff

18   member's identifying information, the inmate is required to "provide any other available

19   information that would assist the appeals coordinator in making a reasonable attempt to identify

20   the staff member(s) in question." Id.

21        Unless the inmate grievance falls within one of the exceptions stated in California Code of

22   Regulations, title 15, §§ 3084.7(b)(1)-(2) and 3084.9, all inmate grievances are subject to a three-

23   step administrative review process: (1) the first level of review; (2) the second level appeal to the

24   Warden of the prison or their designee; and (3) the third level appeal to the Secretary of CDCR,

25   ─────────────
     [3] Currently, submission and review of health care grievances filed by inmate patients is governed by a set of specific
26   regulations that are applicable to only health care grievances. See Cal. Code Regs., tit. 15, § 3087 *et seq.* (operative
     Sept. 1, 2017), renumbered and amended without regulatory effect as Cal. Code Regs., tit. 15, § 3999.225 *et seq.* as
27   of August 6, 2018. However, at the time that Plaintiff's health care grievances were filed in 2016, submission and
     review of health care grievances was governed by the regulations applicable to non-health care grievances. See Cal.
     Code Regs., tit. 15, § 3084 *et seq.* All references to Title 15 of the California Code of Regulations cited herein refer
28   to the regulations in effect in 2016 and 2017 when Plaintiff's health care grievances were submitted and reviewed.

                                                        4

which is conducted by the Secretary's designated representative under the supervision of the third level Appeals Chief. Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.7(a)-(d). Unless the inmate grievance deals with allegations of sexual violence or staff sexual misconduct, an inmate must submit the CDCR Form 602 and all supporting documentation to each the three levels of review within 30 calendar days of the occurrence of the event or decision being appealed, of the inmate first discovering the action or decision being appealed, or of the inmate receiving an unsatisfactory departmental response to a submitted administrative appeal. Cal. Code Regs. tit. 15, §§ 3084.2(b)-(e), 3084.3, 3084.6(a)(2), 3084.8(b). When an inmate submits an administrative appeal at any of the three levels of review, the reviewer is required to reject the appeal, cancel the appeal, or issue a decision on the merits of the appeal within the applicable time limits. Cal. Code Regs. tit. 15, §§ 3084.6(a)-(c), 3084.8(c)-(e). If an inmate's administrative appeal is rejected, the inmate is to be provided clear instructions about how to cure the appeal's defects. Cal. Code Regs. tit. 15, §§ 3084.5(b)(3), 3084.6(a)(1). If an inmate's administrative appeal is cancelled, the inmate can separately appeal the cancellation decision. Cal. Code Regs. tit. 15, § 3084.6(a)(3) & (e).

Since a "cancellation or rejection decision does not exhaust administrative remedies[,]" California's regulations provide that an inmate's administrative remedies are deemed exhausted when the inmate receives a decision on the merits of their appeal at the third level of review. Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.7(d)(3). Further, California's regulations state that "[a]dministrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the [inmate] that was not included in the originally submitted CDCR Form 602 … and addressed through all required levels of administrative review up to and including the third level." Cal. Code Regs. tit. 15, § 3084.1(b).

**B.     Summary of Factual Allegations of Plaintiff's First Amended Complaint**

The events in Plaintiff's first amended complaint are alleged to have occurred while Plaintiff was housed at California Substance Abuse Treatment Facility and State Prison, Corcoran ("SATF").

///

5

1    Plaintiff alleges as follows: On March 5, 2016, Plaintiff was rehoused to Facility "C" 5

2    Block, where he was assigned to an upper/top bunk. At that time, Plaintiff informed Correctional

3    Officer Jimenez that he was a member of the American with Disabilities Act and that he was

4    having a hard time getting up and down from the upper/top bunk. Since custody is responsible

5    for bunk assignment, Plaintiff showed Correctional Officer Jimenez the severity of his disability,

6    and asked if he could be assigned a bottom bunk. Correctional Officer Jimenez stated that he

7    would not attempt to acquire Plaintiff a bottom bunk, and if Plaintiff wanted a bottom bunk, then

8    Plaintiff would have to speak with medical personnel.

9    Three days later, on May 9, 2016, while attempting to get off of his assigned upper/top

10   bunk, Plaintiff fell after his disabled leg gave out from under him and injured his lower back.

11   Plaintiff was rushed to the treatment center, where he was treated and released.

12   On May 10, 2016, Plaintiff submitted a CDCR Form 602 grievance requesting a bottom

13   bunk accommodation chrono. On June 3, 2016, Plaintiff's grievance was rejected, without giving

14   Plaintiff a medical evaluation, and Plaintiff was told that he should submit a medical request to

15   see a doctor.

16   On June 7, 2016, Plaintiff was seen by R.N. Lindsey. On June 17, 2016, Plaintiff saw Dr.

17   Metts. During the appointment, Plaintiff explained to Dr. Metts that he suffers from a severe

18   disability to his right leg and that, due to that disability, his right leg is extremely weak and

19   severely atrophied. Plaintiff also informed Dr. Metts that, due to the weakness in his right leg, he

20   had previously fallen from his assigned upper/top bunk and injured his lower back. Plaintiff told

21   Dr. Metts that, due to his previous fall, he was requesting an accommodation chrono. Dr. Metts

22   examined Plaintiff's right leg and told Plaintiff that he would speak with custody and determine

23   what he would do with regards to an accommodation chrono. Plaintiff then told Dr. Metts that his

24   accommodation chrono request was an urgent matter because he was currently housed on an

25   upper/top bunk, had already fallen once, and he was seeking to prevent another fall. However,

26   Dr. Metts only told Plaintiff that he would get back to Plaintiff, and Plaintiff was sent back to the

27   housing unit without an accommodation chrono.

28   ///

1    For the next three weeks, Plaintiff slept on the floor, waiting for Dr. Metts to call him

2    back.  However, due to bugs, Plaintiff had to return to sleeping in his assigned upper/top bunk.

3    On August 5, 2016, two weeks after Plaintiff returned to sleeping in his assigned upper

4    bunk, Plaintiff suffered another fall after his disabled leg gave out from under him.  This fall caused

5    Plaintiff to sustain a fractured bone in his right foot.

6    After Plaintiff filed another grievance, Plaintiff was finally awarded an accommodation

7    chrono.

8    **C.      Undisputed Material Facts (UMF)[4]**

9    1.      Plaintiff filed his original complaint in this action on December 14, 2016.

10           (Complaint, ECF No. 1.)

11    2.      Plaintiff alleges that, on March 5, 2016, Plaintiff was rehoused within the

12           California Substance Abuse Treatment Facility and Prison (SATF), and assigned

13           an upper bunk.  Plaintiff asked Defendant Jimenez if he could be assigned a

14           bottom bunk because of his disabled leg.  Jimenez stated that he would not attempt

15           to acquire Plaintiff a bottom bunk, and that if Plaintiff wanted one, he would have

16           to speak to medical staff.  (Amended Complaint, ECF No. 14, at 6-7.)

17    3.      Plaintiff alleges that on May 9, 2016, he fell while attempting to get off his upper

18           bunk, after his disabled leg gave out from under him, and injured his back.  (Id. at

19           7.)

20    4.      On May 10, 2016, Plaintiff submitted a Form 602 administrative appeal,

21           requesting a lower bunk chrono.  (Id.)

22    5.      On June 17, 2016, Plaintiff was seen by Defendant Metts.  Plaintiff explained his

23           right leg disability and recent fall, and requested a lower bunk chrono.  (Id. at 7-8.)

24    6.      Not having heard from Dr. Metts about the requested lower bunk chrono, on

25    ───────────────
[4] ECF No. 39-3.  Plaintiff did not provide a separate statement of undisputed facts in his opposition.  Local Rule
26    260(a).  As a result, Defendant's Statement of Undisputed Material Facts in support of his motion for summary
judgment is accepted except where brought into dispute by Plaintiff's verified complaint and declaration in
27    opposition to Defendants' motion for summary judgment.  See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004)
(verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific
facts which are admissible in evidence).  Unless otherwise indicated, disputed and immaterial facts are omitted from
28    this statement.

| 1 | | August 5, 2016, Plaintiff sustained another fall after his disabled leg gave out from |
|---|---|---|
| 2 | | under him, fracturing a bone in his foot.  (Id. at 8.) |
| 3 | 7. | The California Department of Corrections and Rehabilitation (CDCR) uses a |
| 4 | | program called the Inmate Appeals Tracking System (IATS) to electronically log |
| 5 | | and track non-medical appeals through all levels of review.  (Shaw Decl., ¶¶ 4-5; |
| 6 | | Voong Decl., ¶ 4.) |
| 7 | 8. | For medical (health care) appeals, CDCR's Health Care Correspondence and |
| 8 | | Appeals Branch (HCCAB) uses a program database known as the Health Care |
| 9 | | Appeals and Risk Tracking System (HCARTS) to electronically log and track |
| 10 | | inmate health care appeals that are processed by the institution, and at the final |
| 11 | | level of review by HCCAB.  (Gates Decl., ¶ 4.) |
| 12 | 9. | At all relevant times, CDCR and SATF had an administrative process available for |
| 13 | | inmates to submit medical and non-medical appeals.  (Shaw Decl., ¶¶ 2-5; Voong |
| 14 | | Decl., ¶¶ 2-4; Gates Decl., ¶¶ 1-4.) |
| 15 | 10. | The SATF Appeals Office receives, reviews, and tracks all non-medical inmate |
| 16 | | appeals submitted for first and second-level review concerning events at SATF. |
| 17 | | First and second-level appeals accepted at SATF are assigned a log number in the |
| 18 | | institutions IATS system (IATS I & II).  (Shaw Decl., ¶¶ 2, 4-5.) |
| 19 | 11. | CDCR's Office of Appeals (OOA) receives, reviews, and maintains inmates' non- |
| 20 | | medical appeals accepted at the third and final level of administrative review. |
| 21 | | When OOA receives an appeal, it is assigned a third-level tracking number and |
| 22 | | entered into OOA's computer tracking system (IATS III).  (Voong Decl., ¶¶ 3-4.) |
| 23 | 12. | For health care appeals, all appeals at all levels of review are tracked in the |
| 24 | | HCARTS system database.  (Gates Decl., ¶ 4.) |
| 25 | 13. | Plaintiff submitted health care appeal no. SATF-HC-16063382, which was |
| 26 | | received by the SATF Health Care Appeals Office on June 3, 2016.  In this appeal, |
| 27 | | Plaintiff referenced falling from his upper bunk on May 9, 2016, and requested to |
| 28 | | be assigned to a bottom bunk.  This appeal was rejected in a notice sent to |

1    Plaintiff, dated June 3, 2016. The reason for the rejection was: a) that the appeal

2    concerned an anticipating action or decision, as Plaintiff had not requested an

3    evaluation by health care staff prior to submitting the appeal; and b) the appeal

4    was incomplete, as it had not been signed and dated. No further submissions of

5    this appeal were received after the rejection. (Gates Decl., ¶ 8 & Ex. B.)

6    14.   Plaintiff submitted health care appeal no. SATF-HC-16063767, which was

7          received by the SATF Health Care Appeals Office on August 17, 2016. In this

8          appeal, Plaintiff referenced falling from his upper bunk on August 5, 2016, and

9          requested a lower-tier and bunk chrono. This appeal was denied at the third and

10         final level of review on January 17, 2017. (Gates Decl., ¶ 9 & Ex. C.)

11   15.   Plaintiff submitted one other health care appeal for events originating at SATF,

12         appeal no. SATF-HC-16063227. In this appeal, Plaintiff requested to have his

13         inside shoe lifts replaced, and to return his issued orthopedic shoes with a refund to

14         his account. (Gates Decl., ¶¶ 7, 10, & Ex. D.)

15   16.   From May 9, 2016 through December 14, 2016, only three non-medical appeals by

16         Plaintiff were received at the SATF Appeals Office: Appeal log nos. SATF-C-16-

17         02209, SATF-C-16-02793, and SATF-C-16-05157. (Shaw Decl., ¶ 7 & Ex. A.)

18   17.   Appeal log no. SATF-C-16-02209 was screened out and rejected at the first level

19         of review on May 19, 2016. The appeal was rejected because it was not submitted

20         on departmentally approved appeal forms, and the screening notice advised

21         Plaintiff to submit the appeal on a health care appeal form to the SATF Health

22         Care Appeals Office. A comment for this appeal entered into the electronic

23         tracking system states, "Wants lower/lower." No further submittals of this appeal

24         were received. (Shaw Decl., ¶ 8 & Ex. B.)

25   18.   Appeal log no. SATF-C-16-02793 related to religious services, and had nothing to

26         do with Plaintiff requesting a lower bunk accommodation. (Shaw Decl., ¶ 9 & Ex.

27         C.)

28   19.   Appeal log no. SATF-C-16-05157 was withdrawn by Plaintiff with no decision

9

1    made on the appeal.  A comment for this appeal entered into the electronic

2    tracking system states, "wants to raise funds for the Islamic Community Charity."

3    (Shaw Decl., ¶ 10 & Exs. A & D.)

4    20.    No appeals from Plaintiff were accepted for review or screened out at the third

5    level for events originating at SATF, through the date Plaintiff filed his original

6    complaint in this action.  (Voong Decl., ¶¶ 6-7 & Ex. A.)

7    **D.    Analysis of Defendants' Motion**

8    Defendants Metts and Jimenez contend that their motion for summary judgment should be

9    granted and this action should be dismissed without prejudice because CDCR and SATF had an

10   administrative process available for inmates to submit health care appeals, that Plaintiff submitted

11   two health care appeals regarding his request to be assigned to a lower or bottom bunk, that

12   Plaintiff's first lower bunk health care appeal was rejected and was not resubmitted for further

13   review, and that Plaintiff did not exhaust his available administrative remedies with regards to his

14   second lower bunk health care appeal until after his complaint was filed with this Court.  (ECF

15   No. 39-1, at 7-8.)  Conversely, Plaintiff argues that Defendants' summary judgment motion

16   should be denied because, at the time that he filed his original complaint on December 14, 2016,

17   he had no further administrative remedies available to him because his health care appeal

18   requesting a lower bunk chrono, log no. SATF-HC-16063767, had been granted at the

19   Institutional, or second, level of review on September 21, 2016.  (ECF No. 44, at 2, 14.)

20   In this case, the Court finds that Defendants have met their initial burden of proving that

21   there was an available administrative remedy, but that Plaintiff did not exhaust that available

22   administrative remedy in connection with his deliberate indifference to serious medical needs

23   claim against Defendants before Plaintiff filed the instant action. Rhodes v. Robinson, 621 F.3d

24   1002, 1005 (9th Cir. 2010) (stating that "the PLRA's exhaustion requirement does not allow a

25   prisoner to file a complaint addressing non-exhausted claims, even if the prisoner exhausts his

26   administrative remedies while his case is pending[]").  It is undisputed that CDCR and SATF had

27   a three-level administrative process available for inmates to submit health care and non-health

28   care appeals and that Plaintiff submitted two health care appeals regarding his claim that he

10

should be provided with a lower bunk chrono.  Further, it is undisputed that Plaintiff's first lower bunk health care appeal, log no. SATF-HC-16063382, was rejected in a notice sent to Plaintiff dated June 3, 2016 and that Plaintiff did not re-submit his first health care appeal for further review.  See Cal. Code Regs. tit. 15, § 3084.1(b) ("[A] … rejection decision does not exhaust administrative remedies.").  Finally, it is undisputed that Plaintiff's second lower bunk health care appeal, log no. SATF-HC-16063767, was not denied at the third and final level of review until January 17, 2017, approximately a month after Plaintiff filed his original complaint in this action on December 14, 2016.  See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.7(d)(3) (stating that, generally, all inmate appeals are subject to a third level of review, and that a decision on the merits of an inmate appeal at the third level of review exhausts an inmate's administrative remedies as to the issues raised in that appeal).

Therefore, the burden shifts to Plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Albino, 747 F.3d at 1172.  Here, Plaintiff argues that he did not need to proceed to the third level of review in order to exhaust his administrative remedies because his second lower bunk health care appeal, log no. SATF-HC-16063767, was granted at the second level of review.  (ECF No. 44, at 10, 14.)

The Ninth Circuit has made clear that "[t]he obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance."  Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005).  The Ninth Circuit has also stated that "[a]n inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies."  Harvey v. Jordan, 605 F.3d 681, 685 (9th Cir. 2010).

In this case, it is true that Plaintiff's second lower bunk health care appeal, log no. SATF-HC-16063767, was granted at the Institutional, or second, level of review on September 21, 2016.  However, on October 5, 2016, Plaintiff submitted appeal no. SATF-HC-16063767, for a Headquarters', or third, level of review.  In the section of the CDCR 602 HC appeal form for appeal no. SATF-HC-16063767 in which Plaintiff is directed to explain why he is dissatisfied

11

1   with the Institutional level response, Plaintiff stated that he had just received the Institutional

2   Level response "in which a temporary lower bunk lower tier chrono has been granted. I suffer

3   from severe nerve and musle (*sic*) damage which is permanent a temporary solution is not what

4   this situation calls for when I suffer from permanent damages." (ECF No. 39-4, at 26.) By these

5   statements and submitting appeal no. SATF-HC-16063767, for a Headquarters', or third, level of

6   review, the evidence before the Court establishes that Plaintiff was not satisfied with the

7   Institutional, or second, level grant of relief and that there was *some* relief available at the

8   Headquarters', or third, level of review. Therefore, since Plaintiff was obligated to appeal to the

9   Headquarters', or third, level of review in order to exhaust his administrative remedies, the

10  Institutional, or second, level response granting appeal no. SATF-HC-16063767 did not exhaust

11  Plaintiff's administrative remedies. Consequently, the Court finds that Plaintiff has failed to carry

12  his burden of producing any evidence showing that something in his specific case made the

13  generally available administrative remedies effectively unavailable to him.

14          As a result, Defendants have carried their ultimate burden of proving that Plaintiff failed

15  to exhaust his available administrative remedies with regard to his deliberate indifference to

16  serious medical needs claim against Defendants before he filed this action. Albino, 747 F.3d at

17  1166, 1172; Rhodes, 621 F.3d at 1005. Accordingly, Defendants' motion for summary judgment

18  must be granted and the instant action must be dismissed without prejudice. Wyatt v. Terhune,

19  315 F.3d 1108, 1120 (9th Cir. 2003) ("If the district court concludes that the prisoner has not

20  exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice."),

21  overruled on other grounds by Albino, 747 F.3d 1162.

22  **IV.     Order and Recommendations**

23          Based on the foregoing, the Clerk of the Court is HEREBY ORDERED to correct the

24  spelling of Defendant Jimenez's name on the court docket by substituting "Jimenez" for

25  "Jiminez."

26          Furthermore, it is HEREBY RECOMMENDED that:

27  1.      Defendants Metts' and Jimenez's motion for summary judgment for failure to

28          exhaust administrative remedies, (ECF No. 39), be GRANTED; and

12

2.      The instant action be dismissed without prejudice due to Plaintiff's failure to exhaust his available administrative remedies prior to filing suit.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **October 30, 2019**                    /s/ *Barbara A. McAuliffe*
                                                    UNITED STATES MAGISTRATE JUDGE